# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MELISSA WALKER, OBO
S.A.M., MINOR
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-464

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Melissa Walker, on behalf of her son, S.A.M., brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI) childhood disability benefits. This matter is before the Court on plaintiff's Statement of Errors (Doc. 14) and the Commissioner's response in opposition (Doc. 19).

## I. Procedural Background

S.A.M. was born in 2001 and was a school age child at the time of the administrative law judge (ALJ)'s decision. Plaintiff filed an application for SSI childhood benefits on S.A.M.'s behalf in January 2010, alleging disability due to attention deficit hyperactivity disorder (ADHD). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Deborah Smith. Plaintiff and S.A.M. appeared and testified at the ALJ hearing. On January 23, 2012, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

**I.  Analysis**

    **A.  Legal Framework for Disability Determinations**

        To qualify for SSI, plaintiff must file an application and be an "eligible individual" as

defined in the Act.    42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.    Eligibility is dependent upon

disability, income, and other financial resources.    *Id.*; 20 C.F.R. § 416.202.    An individual

under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically

determinable physical or mental impairment, which results in marked and severe functional

limitations, and which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."    42 U.S.C. § 1382c(a)(3)(C)(i).

        The Social Security regulations set forth a three-step sequential analysis for determining

whether a child is disabled for purposes of children's SSI benefits:

    1.    Is the child is engaged in any substantial gainful activity? If so, benefits are denied.

    2.    Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

    3.    Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).    An impairment which meets or medically equals the severity of a

set of criteria for an impairment in the Listing, or which functionally equals a listed impairment,

causes marked and severe functional limitations.    20 C.F.R. § 416.924(d).

        In determining whether a child's impairment(s) functionally equal the Listings, the

adjudicator must assess the child's functioning in six domains:

    1.  Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).   To functionally equal an impairment in the Listings, an

impairment must result in "marked" limitations in two domains of functioning or an "extreme"

limitation in one domain.   20 C.F.R. § 416.926a(d).   The relevant factors that will be considered

in making this evaluation are (1) how well the child initiates and sustains activities, how much

extra help he needs, and the effects of structured or supportive settings; (2) how the child

functions in school; and (3) how the child is affected by his medications or other treatment.   20

C.F.R. § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with

[the] ability to independently initiate, sustain, or complete activities."   20 C.F.R. §

416.926a(e)(2)(i).   A "marked" limitation is one that is "more than moderate" but "less than

extreme."   *Id.*   An "extreme" limitation exists when the impairment "interferes very seriously

with [the] ability to independently initiate, sustain, or complete activities."   20 C.F.R. §

416.926a(e)(3)(i).   An extreme limitation may also seriously limit day-to-day functioning.   *Id.*

If the child's impairment meets, medically equals, or functionally equals the Listing, and

if the impairment satisfies the Act's duration requirement, then the child is considered disabled.

20 C.F.R. § 416.924(d)(1).   If both of these requirements are not satisfied, then the child is not

considered disabled.   20 C.F.R. 416.924(d)(2).

3

In determining functional equivalence, the ALJ must consider the "whole child."   Social

Security Ruling 09-1p, 2009 WL 396031, at *2 (Feb. 17, 2009).   The "whole child" approach

to functional equivalence requires the ALJ to consider the following questions:

> 1. How does the child function? "Functioning" refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments.   We consider:
>
>> • What activities the child is able to perform,
>>
>> • What activities the child is not able to perform,
>>
>> • Which of the child's activities are limited or restricted,
>>
>> • Where the child has difficulty with activities-at home, in childcare, at school, or in the community,
>>
>> • Whether the child has difficulty independently initiating, sustaining, or completing activities,
>>
>> • The kind of help, and how much help the child needs to do activities, and how often the child needs it, and
>>
>> • Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.
>
> 2. Which domains are involved in performing the activities?   We assign each activity to any and all of the domains involved in performing it.   Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.
>
> 3. Could the child's medically determinable impairment(s) account for limitations in the child's activities?   If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.
>
> 4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain?   We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the determination of the degree of limitation.

4

*Id.* (internal citations omitted).   Importantly, SSR 09-01p goes on to provide more detail about

the technique for determining functional equivalence but emphasizes:

> [W]e do not require our adjudicators to discuss all of [these] considerations [] in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.

*Id.* at *3.

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. [S.A.M.] was born [in] . . . 2001.  Therefore, he was a school-age child on January 5, 2010, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

> 2. [S.A.M.] has not engaged in substantial gainful activity since January 5, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

> 3. [S.A.M.] has the following severe impairments: attention deficit disorder; oppositional defiant disorder[1]  (20 CFR 416.924(c)).

> 4. [S.A.M.] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

> 5. [S.A.M.] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

---

[1] Oppositional Defiant Disorder is a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least six months and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper, arguing with adults, deliberately doing things that will annoy other people, blaming others for his own mistakes or misbehavior, being touchy or easily annoyed by others, being angry and resentful, or being spiteful or vindictive.  The behaviors must occur more frequently than is typically observed in individuals of comparable age and developmental level and lead to significant impairment in social, academic, or occupational functioning.  In a significant proportion of cases this disorder is a developmental antecedent to Conduct Disorder.  DSM-IV.

*Goodman ex rel. Chambers* v. *Barnhart,* 247 F. Supp.2d 1249, 1251 (N.D. Ala. 2003).

6. [S.A.M.] has not been disabled, as defined in the Social Security Act, since January 5, 2010, the date the application was filed (20 CFR 416.924(a)) and continuing through the date of this decision.

(Tr. 16-31).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. [S.A.M.] has less than marked limitation in acquiring and using information. (Tr. 25).

2. [S.A.M.] has less than marked limitation in attending and completing tasks. (Tr. 27).

3. [S.A.M.] has less than marked limitation in interacting and relating to others. (Tr. 28).

4. [S.A.M.] has no limitation in moving about and manipulating objects. (Tr. 29).

5. [S.A.M.] has no limitation in the ability to care for himself. (Tr. 30).

6. [S.A.M.] has no limitation in health and physical well-being. (Tr. 30).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

6

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in holding that S.A.M.'s impairments did not functionally equal a listed impairment; (2) the ALJ erred by not giving greater weight to opinion of the consultative examining psychologist, Nancy Schmidtgoessling, Ph.D.; and (3) the ALJ erred in assessing plaintiff's credibility. (Doc. 14). Plaintiff's errors will be addressed in turn.

1. <u>Whether plaintiff's impairments functionally equal a listed impairment.</u>

For her first assignment of error, plaintiff asserts the ALJ erred in holding that S.A.M.'s impairments did not functionally equal a listed impairment. Plaintiff maintains that the report from consultative examining psychologist Dr. Schmidtgoessling and evidence from S.A.M.'s

7

teachers establish that he has marked limitations in the domains of: (1) attending and completing

tasks and (2) interacting and relating with others.   Regarding the attending and completing tasks

domain, plaintiff cites to her consistent reports that S.A.M. has problems paying attention and

that he is easily distracted (Doc. 14 at 9-10, citing Tr. 234, 243, 305); observations from

S.A.M.'s therapist that he has problems following directions and being distracted (Doc. 14 at 10,

citing Tr. 257); Dr. Schmidtgoessling's opinion that S.A.M.'s pace and persistence were half of

that expected for his age, which plaintiff asserts equates to a finding of a marked limitation (*id.*,

citing Tr. 246); and reports from S.A.M.'s teachers documenting his difficulties with paying

attention.   (Doc. 14 at 10-11, citing Tr. 149, 224, 228, 259-60).   With respect to the domain of

interacting and relating with others, plaintiff maintains that the evidence "overwhelmingly

supports a finding" of a marked limitation.   (Doc. 14 at 12).   In support, plaintiff cites to her

reports of S.A.M.'s aggressiveness (*id*, citing Tr. 234); S.A.M.'s poor effort and lack of

cooperation during his consultative examination with Dr. Schmidtgoessling (*id.*, citing Tr.

245-46); reports from S.A.M.'s teachers of his difficulty following rules and disruptive behavior

(Doc. 14 at 12-13, citing Tr. 215, 227, 259); and S.A.M.'s uncooperative behavior during a

November 2011 psychological evaluation.   (Doc. 14 at 13, citing Tr. 302-03).   Plaintiff

contends that this evidence establishes that S.A.M.'s impairments functionally equaled a listed

impairment and that the ALJ's finding to the contrary is not substantially supported by the

evidence of record.   (Doc. 14 at 9-13).

      To determine whether S.A.M.'s impairments met or equaled the listings, the ALJ had to

consider: (1) whether the impairments met a listing; (2) whether the impairments medically

equaled a listed impairment; or (3) whether the impairments were the functional equivalent of a

listed condition.  *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 829 (6th Cir. 2009).  Plaintiff

does not claim that S.A.M.'s impairments met or equaled a listed impairment; thus, the only

issue is whether his impairments functionally equaled a listed impairment.[2]  "Functional

equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in

two 'domains' or an 'extreme' impairment in one domain."  *Id.* (citing 20 C.F.R. § 416.926a.).

The ALJ found that S.A.M. had "less than marked" limitation in the domains of attending and

completing tasks and interacting and relating with others (Tr. 26-27) and, consequently,

determined that S.A.M. was not disabled.[3]  For the following reasons, the undersigned finds that

the ALJ's determinations are substantially supported by the record evidence.

> a. *Attending and Completing Tasks*

In finding that S.A.M. has a "less than marked" limitation in attending and completing

tasks, the ALJ acknowledged the evidence cited by plaintiff establishing S.A.M.'s difficulties

with concentration and difficulty following school rules.   (Tr. 26, citing Tr. 164-73, 214-29).

The ALJ also discussed evidence showing that S.A.M.'s behavior improved with medication[4]

(Tr. 243, plaintiff's reports to Dr. Schmidtgoessling); reports from S.A.M.'s fourth grade teacher

that he was capable of attending and completing tasks successfully when he put forth the effort

(Tr. 229, November 11, 2011 Teacher Questionnaire); and plaintiff's testimony and reports to Dr.

Schmidtgoessling that S.A.M. spends a significant amount of time watching television and

---

[2]Though plaintiff does not identify which of the listed impairments she maintains S.A.M. functionally equals, her argument appears to relate to the listed impairments considered by the ALJ: Listings 112.08 (personality disorder) and 112.11 (Attention Deficit Hyperactivity Disorder).  *See* Tr. 16-17.

[3]The ALJ further determined that plaintiff had a "less than marked" limitation in the domain of acquiring and using information and no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.  (Tr. 25-30).  Plaintiff does not challenge these findings by the ALJ.

[4]Plaintiff was taking Concerta (Tr.291) , which is a central nervous system stimulate indicated for the treatment of ADHD in children age six and older.  *See* http://dailymed.nlm.nih.gov/dailymed (last visited June 4, 2014).

playing video games. (Tr. 45, 48, 246). The ALJ further noted that Steven J. Meyer, Ph.D., and Marianne Collins, Ph.D., the non-examining state agency reviewing psychologists who reviewed S.A.M.'s records in May and October 2010, and opined that plaintiff had a "less than marked" limitation in attending and completing tasks. (Tr. 26-27, citing Tr. 252, 269, 273). The ALJ gave "significant weight" to Dr. Meyer and Dr. Collins' opinions due to their consistency with the record as a whole, and determined that plaintiff had a "less than marked" limitation in attending and completing tasks. (Tr. 26-27). The ALJ's determination is substantially supported.

The Social Security Regulations provide examples of limitations in the attending and completing tasks domain. *See* 20 C.F.R. § 416.926a(h)(3) The evidence of record shows that S.A.M. has some of these limitations, such as frequently interrupting others and requiring extra supervision to stay on task. *See* Tr. 43-45 (plaintiff testified that S.A.M. does not focus in the classroom and requires constant reminders to complete chores); Tr. 246 (Dr. Schmidtgoessling reported that plaintiff was uncooperative during the consultative examination); Tr. 257 (social worker Ashley Forte reported that plaintiff had difficulty following directions and was easily distracted); Tr. 302-03 (at a November 2011 psychological evaluation,[5] S.A.M. was uncooperative, hyperactive, and displayed inappropriate spontaneity). Yet, the fact that S.A.M. has some behavior that coincides with the limitations described in § 416.926a(h)(3) does not mean that he has a marked limitation. *See* 20 C.F.R. § 416.926a(h)(3) ("the examples do not necessarily describe a 'marked' or 'extreme' limitation."). The Court finds that the evidence

---

[5]S.A.M. was treated at The Children's Home of Cincinnati from November 7, 2011, to at least December 5, 2011. (Tr. 302-23). This evaluation was completed as part of his intake.

10

cited by the ALJ and the record as a whole substantially supports the ALJ's finding of a "less than marked" limitation in attending and completing tasks.

The ALJ's finding is supported by the opinion evidence of record. The non-examining state agency reviewing physicians both opined that S.A.M. has a "less than marked" limitation in attending and completing tasks. (Tr. 252, 269, 273). Dr. Meyer's opinion was formed in May 2010 and was based on reports from S.A.M.'s teacher that he "works very well independently. He doesn't receive any assistance in completing his [activities of daily living]. He does tend to rush through his work, and makes careless mistakes." (Tr. 252, citing Tr. 148).[6] Dr. Meyer also considered plaintiff's reports that S.A.M. is forgetful and easily distracted, and evidence from a September 2009 diagnostic assessment from Talbert House[7] that plaintiff displayed appropriate behavior and good impulse control. (Id., citing Tr. 234). Dr. Meyer acknowledged that Dr. Schmidtgoessling observed S.A.M. as putting forth poor effort and persistence during the consultative examination, but noted that there was a question as to whether S.A.M. was malingering during testing. (Id., citing Tr. 245-46). Dr. Collins reviewed the record in October 2010 to address additional evidence from Talbert House and plaintiff's reports that S.A.M. starts fights and is aggressive and destructive. (Tr. 268-72). The evidence from Talbert House includes plaintiff's reports that S.A.M. was having ongoing problems with distraction and aggression; Dr. Collins also noted that plaintiff reported that S.A.M.'s symptoms have improved

---

[6]Dr. Meyer cites to an April 2010 questionnaire completed by Leslie Moore, plaintiff's third grade teacher. (Tr. 147-54). Ms. Moore reported that S.A.M. exhibited "slight" to "obvious" problems in various attending and completing tasks activities, such as focusing on work and completing work accurately, and that he had a "serious" problem with working at a reasonable pace. (Tr. 149). Ms. Moore explained that S.A.M. completes his class work and is an above average reader, but he makes mistakes because of distractibility; she stated that S.A.M. "can easily be an 'A' student but receives 'C's and D's'." (Id.). Ms. Moore further stated that when S.A.M. takes his medication, he "is able to focus on tasks and pays attention." (Tr. 153).

[7]S.A.M. was treated at Talbert House from September 2009 to September 2010 pursuant to plaintiff's reports of S.A.M.'s hyperactivity and anger and distraction problems. (Tr. 234, 274-300).

with medication.  (Tr. 269, citing Tr. 300, May 27, 2010 treatment record).  Upon review of the

record and the new evidence, Dr. Collins agreed with Dr. Meyer that plaintiff had a "less than

marked" restriction in attending and completing tasks.  (Tr. 269).  Dr. Collins reaffirmed this

determination after considering further new evidence, including an increase in S.A.M.'s

medication.  (Tr. 273).

    The opinions of Dr. Meyer and Dr. Collins are consistent with the evidence discussed

above and the ALJ gave valid reasons for adopting their findings that S.A.M. has a "less than

marked" limitation in attending and completing tasks.  *See* 20 C.F.R. § 416.927(e)(2)(f) ("State

agency medical and psychological consultants . . . are highly qualified physicians [and]

psychologists . . . who are also experts in Social Security disability evaluation," and whose

findings and opinions the ALJ "must consider . . . as opinion evidence.").  The opinions of such

consultants may be entitled to significant weight where, as here, they are supported by record

evidence.  Because there is no other medical source opinion in the record regarding plaintiff's

ability to attend and complete tasks[8] and the findings of Dr. Meyer and Dr. Collins are supported

by record evidence, their opinions substantially support the ALJ's determination that S.A.M. has

a "less than marked" limitation in attending and completing tasks.

    The ALJ's determination is also supported by other evidence of record, such as S.A.M.'s

school and therapy records and plaintiff's own statements.  Notwithstanding the evidence from

therapy and school records cited by plaintiff establishing limitations in S.A.M.'s ability to attend

to and complete tasks, the evidence as a whole supports the ALJ's finding that his limitation is

---

[8]To the extent plaintiff contends that Dr. Schmidtgoessling's findings equate to an opinion that S.A.M. has a "marked" limitation in attending and completing tasks, this argument is addressed *infra* in connection with plaintiff's second assignment of error.

12

"less than marked."  For example, while teachers reported that S.A.M. fidgets, has problems

focusing, and engages in disruptive behavior (Tr. 149, 228, 259-60), they also reported that he "is

a loving respectful child when not around his peers" and is capable of success.  (Tr. 229).

S.A.M.'s fourth grade teacher Paula Dornbusch also noted that S.A.M. was not referred to

special class placement but, rather, to treatment with The Children's Home of Cincinnati for

behavioral issues.  (Tr. 223).  While Ms. Dornbush reported that S.A.M.'s behavior was an

impediment to his success, she did not believe that S.A.M. required special help to learn

successfully and wrote: "[S.A.M.]'s lack of completing homework and controlling his disruptive

behavior are the main and only reasons he is struggling in school.  I see no impairments at this

time.  He is very capable."  (Tr. 224).  These reports from S.A.M.'s teachers substantially

support the ALJ's finding of a "less than marked" limitation in attending and completing tasks.

Similarly, the psychological evidence establishes S.A.M.'s capabilities in

problem-solving and engaging in therapy.  While plaintiff was uncooperative during his

consultative examination with Dr. Schmidtgoessling and during the November 2011

psychological evaluation (Tr. 246, 302), later treatment notes from The Children's Home of

Cincinnati reflect that S.A.M. was engaged in therapy, "did a great job participating," was able to

explore new approaches when dealing with others, and was respectful and cooperative and

wanting to make changes.  (Tr. 321-23).  These notes provide substantial support for the ALJ's

conclusion.

Further, though plaintiff maintains that S.A.M. has a "marked" limitation in attending and

completing tasks based, in part, on her testimony and reports that he is forgetful, lacks focus, and

requires constant reminders to complete tasks, she also testified and reported that S.A.M. enjoys

13

watching television and playing video games for hours. S.A.M.'s ability to concentrate on television and video games for such an extended period of time supports the ALJ's conclusion that S.A.M. does not have a "marked" limitation in attending and completing tasks. *See Cartwright v. Comm'r of Soc. Sec.*, No. 10-cv-13954, 2011 WL 4962493, at *9-10 (E.D. Mich. Aug. 23, 2011) (Report and Recommendation), *adopted*, 2011 WL 4962413 (E.D. Mich. Oct. 19, 2011) (evidence that child played video games and read for 3 to 4 hours daily supported ALJ's finding of a "less than marked" limitation in the attending and completing tasks domain).

In consideration of the above, the undersigned finds that the ALJ's determination that S.A.M. has a "less than marked" limitation in the attending and completing tasks domain is supported by substantial evidence.

b. *Interacting and Relating with Others*

In assessing S.A.M.'s ability to interact and relate to others, the ALJ considered plaintiff's reports that S.A.M. had difficulty getting along with his siblings and reports from teachers that he had trouble following rules and listening to authority. (Tr. 27, citing Tr. 143-44, 223, 227). The ALJ nevertheless found that that S.A.M. had a "less than marked" limitation in this domain based on the whole of the record evidence. The ALJ cited to plaintiff's report to S.A.M.'s therapist in August 2010 that S.A.M. had "did well over the summer [and] that she did not have any major problems or concerns." (*Id.*, citing Tr. 294). The ALJ also cited to November and December 2011 progress notes from The Children's Home of Cincinnati showing that S.A.M. was making progress in therapy and in working on his social relationships; plaintiff's mother reported in these notes that S.A.M. got along well with his female classmates. (Tr. 27-28, citing Tr. 305, 321-23). Further, the ALJ discussed S.A.M.'s testimony at the ALJ

14

hearing that he had friends; played basketball and football at recess; and played with his friends at the park or at their homes after school.  (*Id.*, citing Tr. 58-59).   The ALJ discussed S.A.M.'s poor cooperation during Dr. Schmidtgoessling's consultative examination, but noted that this did not necessarily support a finding of a "marked" limitation as Dr. Schmidtgoessling found that S.A.M. did not put forth good effort during the exam and was possibly malingering.  (Tr. 28, citing Tr. 245-46).   Lastly, the ALJ gave "significant weight" to the opinions of Dr. Meyer and Dr. Collins who both opined that S.A.M. had a "less than marked" limitation in the domain of interacting and relating with others.  (*Id.*, citing 252, 269, 273).   The undersigned finds that the ALJ's determination is substantially supported by the evidence of record.

The Social Security Regulations outline the sort of interpersonal interactions a child S.A.M.'s age should be able to perform:

> When you enter school, you should be able to develop more lasting friendships with children who are your age.  You should begin to understand how to work in groups to create projects and solve problems.  You should have an increasing ability to understand another's point of view and to tolerate differences.  You should be well able to talk to people of all ages, to share ideas, to tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).   The regulations also provide examples of the types of limited functioning in this domain, such as having no close friends; avoiding or withdrawing from people you know or being overly anxious or fearful of meeting new people or experiencing new things; having difficulty playing games or sports with rules; having difficulty communicating; and having difficulty speaking intelligibly or with adequate fluency.  *See* 20 C.F.R. § 416.926a(i)(3).

To establish that substantial evidence does not support the ALJ's finding of "less than marked" limitation in interacting and relating with others, plaintiff points to her reports of

S.A.M.'s aggressiveness (Tr. 234), his failure to cooperate with Dr. Schmidtgoessling or at the November 2011 psychological evaluation (Tr. 245-46, 302-03), and reports from teachers of his problems following rules and disruptive behavior. (Tr. 215, 227, 259). Plaintiff argues that this evidence establishes that S.A.M. has a "marked" limitation in the domain of interacting and relating with others. Plaintiff further argues that the ALJ's finding lacks substantial support because the ALJ did not discuss the evidence from S.A.M.'s teachers and because the ALJ improperly discounted Dr. Schmidtgoessling's opinion that S.A.M.'s "personal-social behavior patterns are one-half of that expected for a child his age."[9] (Tr. 246). Plaintiff's arguments are not well-taken.

First, plaintiff's assertion that the ALJ "failed to address [S.A.M.'s] teachers' questionnaires" (Doc. 14 at 13) is incorrect. Plaintiff maintains the ALJ failed to consider: (1) a Vanderbilt Assessment form completed by S.A.M.'s 3rd grade teacher, K. Westerling, which included findings that S.A.M. had difficulty waiting in line, blurted out answers, interrupted and intruded on others, and had problems following rules (Tr. 259); and (2) the questionnaire completed by Ms. Dornbusch wherein she reported that S.A.M. had serious to very serious problems following class rules, being disruptive, talking out of turn, and defying authority. (Tr. 227). Review of the ALJ's decision establishes that the ALJ thoroughly considered this evidence. *See* Tr. 20 (noting Ms. Dornbusch's reports that S.A.M. "did not follow class rules, was aggressive, disruptive in the classroom and defied authority."); Tr. 21 (the ALJ discussed Ms. Westerling's findings that S.A.M. had difficulty with his behavior and would "blurt out answers, had difficulty waiting in line and interrupted others."). As the ALJ's thorough

---

[9]The evidence from Dr. Schmidtgoessling will be addressed in the Court's discussion of plaintiff's second assignment of error.

16

discussion establishes that she considered this evidence from S.A.M.'s teachers, the undersigned finds no error in this regard.

Second, reports and testimony from S.A.M. and plaintiff substantially support the ALJ's determination that S.A.M. has a "less than marked" limitation in the domain of interacting and relating with others.   While plaintiff testified and reported that S.A.M. does not get along with his peers, has no friends, and does not play with other children (Tr. 46, 48, 143-44, 244), she also reported that he had average relationships with his siblings and peers (Tr. 262) and got along with children in his old neighborhood.   (Tr. 305).   Further, S.A.M. testified and reported that he has friends with whom he plays and visits and that he does not often fight with other children. (Tr. 58-59).   These reports from plaintiff and S.A.M. about his friendships and positive interactions with peers provide substantial support for the ALJ's finding of a "less than marked" limitation in the domain of interacting and relating with others.

Third, there is ample evidence from S.A.M.'s teachers and therapists which support the ALJ's determination.   Ms. Dornbusch reported that although S.A.M. has disruptive and aggressive tendencies, she also reported that he has no trouble making or keeping friends.   (Tr. 227).   As for problems with defying authority, Ms. Dornbusch reported that S.A.M. is "a loving and respectful child when not around his peers."   (Tr. 229).   Ms. Westerling reported that plaintiff is not cruel, does not bully, is not fearful or anxious, and has an average relationship with his peers.   (Tr. 259-60).   Further, S.A.M.'s therapist at The Children's Home of Cincinnati described S.A.M. as being very cooperative and respectful during therapy; capable of building a trusting therapeutic relationship; insightful about identifying emotional triggers and discussing his feelings; and understanding others' points of view.   (Tr. 321-23).   The ALJ could reasonably

conclude that this evidence does not portray an individual with a "marked" limitation in interacting and relating with others as provided by the Regulations. *See* 20 C.F.R. § 416.926a(i)(3) (noting that limitations include having no friends, avoiding people, being overly fearful, exhibiting problems communicating, and having difficulty playing sports with rules).

Lastly, both reviewing psychologists opined that plaintiff has a "less than marked" limitation in this domain. Dr. Meyer noted the 2009 Talbert House assessment that S.A.M. was cooperative and had normal speech, a euthymic mood, and attentive facial expression. (Tr. 234). Dr. Meyer also considered plaintiff's reports and Dr. Schmidtgoessling's opinion that S.A.M.'s personal-social behavior patterns are one-half of that expected for a child his age. However, Dr. Meyer concluded that plaintiff's reports were inconsistent with S.A.M.'s level of functioning as described in school records. (Tr. 255). Dr. Meyer also did not give weight to Dr. Schmidtgoessling's findings as S.A.M. was not cooperative during the consultative exam and because the findings were inconsistent with teacher ratings and S.A.M.'s lack of specialized education and mental health treatment. (*Id.*). Dr. Meyer therefore opined that plaintiff had a "less than marked" limitation in interacting and relating with others; Dr. Collins later came to this same conclusion. (Tr. 252, 269). The record evidence discussed above and cited by these doctors supports their conclusions. Accordingly, their findings provide substantial support for the ALJ's determination. *See* 20 C.F.R. § 416.927(e)(2)(f).

For the above reasons, the Court finds that the ALJ's determination that S.A.M. has "less than marked" limitations in the domains of attending and completing tasks and interacting and relating with others is substantially supported by the evidence of record. Consequently, plaintiff's first assignment of error should be overruled.

18

2. Whether the ALJ erred in weighing the opinion of Dr. Schmidtgoessling.

For her second assignment of error, plaintiff contends the ALJ erred by giving only

"moderate" weight to Dr. Schmidtgoessling's findings (Tr. 242-49) and giving "significant"

weight to the opinions of the state agency reviewing psychologists (Tr. 250-55, 267-73). (Doc.

14 at 13-16). Plaintiff asserts that Dr. Schmidtgoessling's findings that S.A.M.'s personal-social

behavior patterns and work pace and persistence were approximately half of that expected of a

child S.A.M.'s age equate to an opinion that S.A.M. has marked limitations in attending and

completing tasks and interacting and relating with others. (Doc. 14 at 14). Plaintiff maintains

that the ALJ should have adopted Dr. Schmidtgoessling's findings because they are supported by

the following evidence: S.A.M.'s poor performance, while on medication, during Dr.

Schmidtgoessling's consultative examination; reports from S.A.M's teachers of his distractibility

and defiant behavior; and his poor cooperation at the November 2011 psychological evaluation.

(Doc. 14 at 13-14, citing Tr. 215, 228, 244-46, 258, 259, 302-03). Further, plaintiff argues that

Dr. Schmidtgoessling's findings should have been given greater weight than the opinions of the

reviewing psychologists because she had the opportunity to personally examine and observe

S.A.M. (Doc. 14 at 16).

"The Commissioner has elected to impose certain standards on the treatment of medical

source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set

forth in administrative regulations, describe (1) the various types of evidence that the

Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an

impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. §

404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This

19

evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id*. (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. § 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id*. at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).

Dr. Schmidtgoessling examined S.A.M. on May 13, 2010. (Tr. 242-47). Plaintiff reported that S.A.M. had anger outbursts, refused to follow rules, instigated fights, and used unacceptable language. (Tr. 242). He was taking medication (Concerta and Ritalin) for ADHD and had taken his medicine the day of the examination. (Tr. 243). Plaintiff reported that S.A.M.'s problems started at school when he was six years old. (Tr. 244). She also reported that the medication helped with the severity of S.A.M.'s behavioral problems, but not with the

20

frequency. (Tr. 243-44). Plaintiff stated that S.A.M., then in the third grade, had never been in special classes, but had just gotten an individualized education program (IEP). (*Id.*).

On examination, Dr. Schmidtgoessling found that S.A.M. was not hyperactive, but was not cooperative in that he either did not answer her questions or provided obviously wrong answers. (Tr. 244). She further found that he had normal and logical flow of conversation and thought and showed no signs of depression or mania. (*Id.*). Based on plaintiff's descriptions of S.A.M. as a "loner," it appeared that S.A.M. was distant with others and not well attached. (*Id.*). It also appeared that S.A.M. had poor insight and judgment based on plaintiff's reports that "he just looks at [her]" when she tries to talk to him about his behavior. (Tr. 245). Regarding S.A.M.'s sensorium and cognitive functioning, Dr. Schmidtgoessling noted that S.A.M. was alert but had poor effort and persistence throughout the testing and "at times gave obviously wrong answers, raising the question of malingering." (Tr. 245). Accordingly, Dr. Schmidtgoessling determined it was not possible to estimate S.A.M.'s intellectual functioning but stated that it appeared he was of average intelligence based on the results from the September 2009 diagnostic assessment performed through Talbert House. (Tr. 246). Dr. Schmidtgoessling concluded that S.A.M.'s: (1) "receptive and expressive speech appeared age appropriate as best as could be determined given his lack of cooperation"; (2) "personal-social behavior patterns are one-half of that expected for a child his age"; (3) work pace was half of that expected for a child his age as he worked very slowly; and (4) ability to maintain attention and concentration could not be assessed because of his failure to cooperate with testing, but based on plaintiff's reports she estimated that S.A.M.'s ability to maintain attention and concentration was substantially below that expected for a child his age. (Tr. 246).

The ALJ thoroughly discussed the results of Dr. Schmidtgoessling's consultative examination and gave "moderate" weight to the doctor's conclusions. (Tr. 23-24). The ALJ explained her decision as follows:

> The undersigned [ALJ] gives moderate weight to the assessment and opinion from [Dr. Schmidtgoessling] since [S.A.M.] did not put forth his full potential in the mental examination. In addition, [plaintiff] provided inconsistent statements including that [S.A.M.] had an [IEP]. [Plaintiff]'s inconsistent statements and [S.A.M.]'s poor effort during the evaluation suggest that the assessment may be invalid.

(Tr. 24). As stated above, plaintiff asserts the ALJ erred in adopting the findings of the reviewing psychologists and not Dr. Schmidtgoessling's because Dr. Schmidtgoessling had the opportunity to personally examine S.A.M. and, further, her findings are supported by and consistent with the other record evidence. For the following reasons, the Court finds that the ALJ's decision to give "moderate" weight to Dr. Schmidtgoessling's opinions is supported by substantial evidence.

At the outset, the Court finds that plaintiff's contention that Dr. Schmidtgoessling's findings that S.A.M. has personal-social behavior patterns and work pace and persistence at less than one-half to one-half that expected for a child his age equate to an opinion that S.A.M. has "marked" limitations in the domains of interacting and relating with others and attending and completing tasks, *see* Doc. 14 at 13, is without merit. Plaintiff puts forth no evidence supporting her interpretation of Dr. Schmidtgoessling's findings nor does she cite to any authority which would permit the Court to conclude that the doctor intended her findings to be construed in this manner. Indeed, Dr. Schmidtgoessling stated that she was unable to assess S.A.M.'s ability to maintain attention and concentration given his poor effort during examination. *See* Tr. 246. Dr. Schmidtgoessling's explicit declination to form an opinion as to S.A.M.'s attention and

concentration abilities contradicts plaintiff's argument that the doctor opined that S.A.M. has a "marked" limitation in attending and completing tasks.   In the absence of any additional evidence or authority supporting plaintiff's reading of Dr. Schmidtgoessling's findings, the Court declines to assume that the doctor intended to opine that S.A.M. had "marked" limitations in the domains of attending and completing tasks and interacting and relating with others.

Regarding Dr. Schmidtgoessling's actual findings – that S.A.M.'s personal-social behavior patterns are one-half of that expected for a child his age and that his ability to maintain attention and concentration was substantially below that expected for a child his age – the ALJ's decision to give these findings only "moderate" weight is substantially supported.   As noted by the ALJ, S.A.M. put forth poor effort during testing so much so that Dr. Schmidtgoessling reported that it appeared he was malingering.   (Tr. 245).   Even Dr. Schmidtgoessling determined she could not rely on S.A.M.'s testing results at the consultative examination in forming her conclusions.   *See* Tr. 245-46.   Though S.A.M. tested in the retarded range in fund of knowledge questions, similarities, and judgment in hypothetical questions due to his poor effort, Dr. Schmidtgoessling noted that he appeared to be of average intelligence based on prior testing results.   (*Id*.).   Indeed, the other evidence of record is inconsistent with S.A.M.'s scores in the mentally retarded range.   *See* Tr. 148 (Ms. Moore stated that S.A.M. could "easily be an 'A' student"); Tr. 219 (while plaintiff had failing grades in math during the 2011-12 school year, he had Bs in reading and social studies and a C in writing); Tr. 220 (S.A.M.'s first quarter report card from October 2011 reflects that he was able to grasp key concepts, summarize main ideas in a reading, and develop clear ideas in writing); Tr. 229 (Ms. Dornbusch stated that S.A.M. was capable of academic success).   Likewise, there is substantial evidence in the record supporting

23

the ALJ's finding that S.A.M.'s personal-social behaviors are not as limited as Dr.

Schmidtgoessling found.   As discussed above, though S.A.M. clearly has problems with being

disruptive and following rules, the evidence does not establish that he functions at a level half of

what is expected of a child his age.   *See* Tr. 262, 305 (plaintiff reported that S.A.M. has average

relationships with peers and gets along with children in his old neighborhood); Tr. 58-59 (S.A.M.

testified that he plays with friends and doesn't often get into fights); Tr. 227, 259-60 (teachers

reported that S.A.M. has no trouble making or keeping friends and has an average relationship

with his peers); Tr. 321-23 (therapy notes include reports that S.A.M. built a trusting relationship

with his therapist and was open to and cooperative in the therapeutic process).[10]   This evidence

substantially supports the ALJ's determination that S.A.M. has greater functional capabilities

than those found by Dr. Schmidtgoessling.   Accordingly, the undersigned finds that it was

reasonable for the ALJ to give that Dr. Schmidtgoessling's only "moderate" weight in light of

S.A.M.'s poor cooperation and effort at the consultative examination and the evidence as a

whole.

To the extent plaintiff contends the ALJ erred under 20 C.F.R. § 416.927(d)(1),[11] by

giving greater weight to the opinions of the reviewing psychologists than to Dr.

Schmidtgoessling given her ability to examine S.A.M. personally, the undersigned disagrees.

As explained above, the results of Dr. Schmidtgoessling's testing are questionable given

S.A.M.'s failure to cooperate with the examination.   Further, Dr. Schmidtgoessling's findings

---

[10]Insofar as plaintiff asserts that Dr. Schmidtgoessling's findings are supported by S.A.M.'s poor cooperation at the initial November 2011 evaluation with his therapist, these later positive treatment notes indicate that S.A.M. was able to successfully engage with his therapist once a trusting relationship was formed.

[11]While plaintiff cites to 20 C.F.R. § 404.1527, this regulation involves claims for disability insurance benefits; the controlling provision in evaluating children's SSI claims is 20 C.F.R. § 416.927.   Further, 20 C.F.R. § 416.927 was amended effective March 26, 2012.   The provisions governing the weight to be afforded a medical opinion were previously found at § 416.927(d) are now found at § 416.927(c).

are not consistent with the other evidence of record cited above which portrays a child with some

limitations but who is capable of academic success. In contrast, the findings of the reviewing

physicians – that S.A.M. has "less than marked" limitations in the domains of interacting and

relating with others and attending and completing tasks – are consistent with this evidence. *See*

20 C.F.R. § 416.927(c)(3)-(4) ("the more consistent an opinion is with the record as a whole, the

more weight [the ALJ] will give to that opinion."). Further, it appears that Dr. Schmidtgoessling

based many of her conclusions on plaintiff's subjective reports regarding S.A.M. *See* Tr. 244 (in

assessing S.A.M.'s social interactions, Dr. Schmidtgoessling noted that "[i]t sounded from

[plaintiff's] description that as if (sic) [S.A.M.] is somewhat distant with others and not well

attached."); Tr. 245 (Dr. Schmidtgoessling found that S.A.M. appeared to have poor insight and

judgment based on plaintiff's report that "when [plaintiff] tries to talk with [S.A.M.] about his

behavior, 'he just looks at me.'"). The ALJ is not required to accept medical opinions from

mental health providers based solely on an individual's subjective complaints which are not

supported by clinical observations. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th

Cir. 2010). The record demonstrates that the ALJ properly considered all of the evidence in

weighing Dr. Schmidtgoessling and the reviewing psychologists' medical opinions and her

decision to given "moderate" weight to Dr. Schmidtgoessling's findings is supported by

substantial evidence.

Lastly, plaintiff's argument that the ALJ created her own medical opinion in discounting

Dr. Schmidtgoessling's findings is not well-taken. Plaintiff argues that the ALJ improperly

found Dr. Schmidtgoessling's entire exam to be invalid. (Doc. 14 at 14). Dr. Schmidtgoessling

acknowledged S.A.M.'s lack of cooperation and specifically identified the areas she was unable

to assess based on this consideration. Plaintiff asserts that by rejecting Dr. Schmidtgoessling's entire opinion based on S.A.M.'s lack of cooperation, the ALJ "effectively acted as her own medical professional. . . ." (*Id.*).

Plaintiff's argument fails to acknowledge that the ALJ's decision to discount Dr. Schmidtgoessling's findings was also based on the fact that the doctor relied on plaintiff's statements – statements that the ALJ found were inconsistent with other statements made by plaintiff. *See* Tr. 24 ("[Plaintiff]'s inconsistent statements and [S.A.M.]'s poor effort during the evaluation suggest that the assessment may be invalid."). Moreover, the ALJ did not make this determination in a vacuum; Dr. Meyer also found that Dr. Schmidtgoessling's assessment was not due any weight given S.A.M.'s poor effort on examination and the inconsistency of plaintiff's statements with other record evidence. *See* Tr. 255. As explained more fully in connection with plaintiff's third assignment of error, the ALJ's determination that plaintiff made inconsistent statements to Dr. Schmidtgoessling is supported by substantial evidence. This and Dr. Meyer's opinion provide substantial support for the ALJ's conclusion that Dr. Schmidtgoessling's assessment may be invalid.

For the above reasons, the undersigned finds that the ALJ did not err in weighing Dr. Schmidtgoessling's opinions and recommends that plaintiff's second assignment of error be overruled.

3. <u>Whether the ALJ erred in assessing plaintiff's credibility.</u>

For her final assignment of error, plaintiff contends the ALJ erred in discounting her credibility. Plaintiff asserts the ALJ "focused inordinately" on evidence showing that plaintiff and S.A.M. missed various medical appointments in discounting her credibility as

plaintiff testified at the ALJ hearing that she missed these appointments because she had to care

for her other disabled children.  (Doc. 14 at 17, citing Tr. 54-55).  Plaintiff further asserts that

her hearing testimony was consistent with statements she made in a 2010 Function Report.  (*Id.*,

citing Tr. 128, 130, 132).  Regarding the ALJ's determination that plaintiff's statements in a

September 2009 behavior survey were inconsistent with her statements in the 2010 Function

Report, plaintiff argues her statements in the Function Report were not inconsistent; rather, they

reflected that S.A.M.'s condition had worsened in the six months following the completion of the

survey.  (*Id.*, citing Tr. 121-24, 261-62).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses.  *Rogers*, 486 F.3d at 247 (citations omitted).   In light of the ALJ's opportunity to

observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and

should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667

F.2d at 538.  "If an ALJ rejects a [witness]'s testimony as incredible, he must clearly state his

reasons for doing so."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's

articulation of reasons for crediting or rejecting a witness's testimony must be explicit and "is

absolutely essential for meaningful appellate review."  *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517,

519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible

or intuitive notion about an individual's credibility."  *Rogers,* 486 F.3d at 247.   Rather, such

determination must be "based on a consideration of the entire case record."  *Id.*  Consistency

between a witness's statements and the other evidence in the record tends to support the

27

credibility of the witness while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination to discount plaintiff's credibility. The ALJ determined that plaintiff's statements as to the severity of S.A.M.'s impairments were not fully credible due to inconsistencies between her testimony and other statements of record and because she did not attend various medical appointments and appointments with educators. (Tr. 19-24). The ALJ did not err in this regard.

Plaintiff missed numerous appointments with educators and medical professionals. *See* Tr. 223, 228 (Ms. Dornbusch reported that plaintiff was not able to make multiple meetings); Tr. 275 (notes from Talbert House reflect that S.A.M.'s treatment was terminated because plaintiff did not appear at three separate meetings with a school therapist); Tr. 277-78 (plaintiff rescheduled a missed appointment only after being contacted by the therapist). While plaintiff asserts that she missed these appointments because she was caring for her other children, this does not explain her failure to contact these teachers and medical professionals in advance to reschedule. It was therefore appropriate for the ALJ to discount plaintiff's credibility due to her failure to attend appointments intended to address S.A.M.'s impairments. *See Moore v. Astrue*, No. 1:09-cv-825, 2011 WL 1398480, at *6 (S.D. Ohio Apr. 13, 2011) (ALJ entitled to discount credibility given plaintiff's poor track record at keeping appointments); *Washington v. Comm'r of Soc. Sec.*, No. 1:07-cv-230, 2008 WL 4449428, at *7 (S.D. Ohio Sept. 30, 2008) (decision to discount credibility substantially supported where plaintiff missed appointments).

Assuming, *arguendo*, that the ALJ was not entitled to discount plaintiff's credibility due to her missed appointments, the ALJ's credibility finding is substantially supported by plaintiff's

multiple inconsistent statements. The ALJ identified, *inter alia*, the following inconsistencies in plaintiff's statements: (1) plaintiff testified that medication did not improve S.A.M.'s ability to focus (Tr. 42, 44), but reported to Social Worker Forte that medications help with S.A.M.'s symptoms (Tr. 258); (2) plaintiff reported to Dr. Schmidtgoessling in May 2010 that S.A.M. had no relationship with his biological father (Tr. 242-43), but in November 2011 reported that S.A.M. had stayed connected with his father, visited him in the summer, and spoke with him daily on the phone (Tr. 305); and (3) plaintiff testified that S.A.M. did not have an IEP in 2010 or 2011 (Tr. 42, 44), but told Dr. Schmidtgoessling that he did (Tr. 242). (Tr. 21-24). The ALJ also noted that plaintiff's failure to follow through with appointments and medication regimens for S.A.M. reflected poorly on plaintiff's credibility and her reports on the severity of S.A.M.'s impairments. (Tr. 24).

In light of the evidence considered by the ALJ, the inconsistencies between plaintiff's statements and testimony and other evidence of record, and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 7/3/14

Karen L. Litkovitz
United States Magistrate Judge

29

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISSA WALKER, OBO                                  Case No. 1:13-cv-464
S.A.M., MINOR
        Plaintiff,                                   Barrett, J.
                                                     Litkovitz, M.J.
    vs.

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.    This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.    If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.    A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.    *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).